FILED IN OPEN COURT
ON 11-24-2025 BG
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:25-CR-115-D-RN-1
NO. 7:25-CR-115-D-RN-2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **INDICTMENT** |
| | ) | |
| BARRETT BAXLEY | ) | |
| CONSTANCE BAXLEY | ) | |

The Grand Jury charges that:

## INTRODUCTION

### Defendants and Relevant Entities

1. Defendant BARRETT BAXLEY ("BARRETT"), 46, was a resident of North Carolina. BARRETT lived at 114 Sand Dollar Street, Holden Beach, NC. Using aliases, fictitious identities and shell businesses, BARRETT often claimed to be a resident of Charleston, South Carolina.

2. Defendant CONSTANCE BAXLEY ("CONSTANCE") was a resident of North Carolina and was the mother of BARRETT. CONSTANCE lived at 1190 E. Connecticut Avenue, Southern Pines, North Carolina, and at 114 Sand Dollar St., Holden Beach, North Carolina. CONSTANCE held a fraudulently obtained South Carolina driver's license listing an address of 9 E. Battery St., Charleston, SC. CONSTANCE often claimed to be a resident of South Carolina, but did not live in

South Carolina and had no legitimate affiliation with the address listed on her driver's license.

3. Southern Plantation Properties Holding LLC ("Southern Plantation") was formed in the State of South Carolina on August 1, 2018. Business registration documents filed with the South Carolina Secretary of State provided a fictitious address of 165 Market Street, Charleston, South Carolina. Southern Plantation was a shell company created and used by the defendants to commit fraud.

4. Grady White Boats LLC was formed in the State of South Carolina on October 3, 2021. The registered agent was listed as Constance Autry Baxley, 165 Market Street, Charleston, South Carolina. Grady White Boats LLC was a shell company created and used by the defendants to commit fraud. Grady White Boats LLC had no true affiliation with Grady-White Boats, Inc., a boat manufacturer headquartered in Greenville, NC.

5. Baxley Construction Company LLC ("Baxley Construction") was formed in the State of South Carolina on March 31, 2022. Business registration documents filed with the South Carolina Secretary of State provided a fictitious address of 165 Market Street, Charleston, South Carolina. Baxley Construction was a shell company created and used by the defendants to commit fraud.

6. Charleston Exotic Imports LLC was formed in the State of South Carolina on October 24, 2022. The registered agent was "Connie Autry, 06 Battery St, Charleston, SC."

7. Euro Autoworks was a fictitious business name used by the defendants to commit fraud.

8. East Coast Recovery & Towing was a fictious business name used by the defendants to commit fraud.

9. 9 East Battery Street was the address of the Robert William Roper House, an early-nineteenth-century residence and National Historic Landmark located in Charleston, South Carolina. This address was used by the defendants to commit fraud. The defendants had no legitimate affiliation with this address.

10. 165 Market Street was the address for the Canterbury House, a senior community located in Charleston, South Carolina. This address was used by the defendants to commit fraud. The defendants had no legitimate affiliation with this address

**COUNT ONE**

11. The Grand Jury realleges and incorporates by reference the allegations contained in Paragraphs 1 through 10 of this Indictment as if fully set forth herein.

12. Beginning at a date unknown to the Grand Jury, but no later than in or about July 2018, and continuing up to and including the present, in the Eastern District of North Carolina and elsewhere, BARRETT BAXLEY and CONSTANCE BAXLEY, the defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is,

a. to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud financial institutions, and to obtain and attempt to obtain monies, funds and credits of financial institutions, under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344 ("Bank Fraud");

b. to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, and for purposes of executing or attempting to execute the scheme, used the mails or caused the mails to be used, in violation of Title 18, United States Code, Section 1341 ("Mail Fraud"); and

c. to knowingly and willfully devise a scheme and artifice to defraud and to obtain and attempt to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property from individuals and businesses, and for the purpose of executing, and in furtherance of said scheme, transmitting and causing to be transmitted by means of wire communications in interstate commerce, certain signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343 ("Wire Fraud").

### Object of the Conspiracy and Scheme to Defraud

13. The primary object of the conspiracy and scheme to defraud was to obtain money and property from financial institutions, auto dealerships, insurance carriers, and private citizens by means of false, and fraudulent pretenses and representations.

### Ways, Manner and Means of the Conspiracy

14. It was part of the conspiracy and scheme to defraud that the defendants obtained indirect financing to fund the purchase of dozens of vehicles from auto dealers in the Eastern District of North Carolina and elsewhere.

15. It was further a part of the conspiracy and scheme to defraud that the defendants provided materially false information in vehicle sales contracts and in loan applications submitted to commercial lending institutions to obtain financing the purchase of vehicles, including, but not limited to:

a. the identity of the purchaser;
b. purchaser address and contact information;
c. purchaser salary and income;
d. employer name;
e. length of employment, and;
f. employer address and contact information.

16. It was further a part of the conspiracy and scheme to defraud that the defendants formed shell companies in the State of South Carolina and opened bank accounts in the name of these shell companies which were used to receive and transmit fraud proceeds.

17. It was further a part of the conspiracy and scheme to defraud that defendant CONSTANCE BAXLEY obtained a South Carolina driver's license by falsely claiming to be a resident of South Carolina and by submitting a utilities bill that had been altered to falsely reflect that she lived in South Carolina.

18. It was further a part of the conspiracy and scheme to defraud that the defendants used the fraudulently obtained driver's license to register vehicles in the State of South Carolina.

19. It was further a part of the conspiracy and scheme to defraud that, when registering vehicles, the defendants sometimes omitted the existence of a lienholder for the purpose of obtaining a title that appeared to be free and clear, when the title was in fact encumbered by a lien.

20. It was further part of the conspiracy and scheme to defraud that the defendants, by design, made few payments or no payments toward the balance of the vehicle loans, resulting in loan default and efforts by creditors to repossess the vehicles or otherwise recoup their losses.

21. It was further a part of the conspiracy and scheme to defraud that the defendants employed tactics designed to obstruct creditors and avoid detection by law enforcement including, but not limited to, the following:

a. creating shell companies;
b. using aliases and fictitious identities;
c. using alias email addresses;
d. using more than twenty different phone numbers;
e. using alias Facebook accounts;

f. using false or fictious addresses located in the State of South Carolina;
g. concealing fraudulently-purchased vehicles in storage units and on property belonging to third parties;
h. using multiple banks accounts with different banks;
i. transferring fraud proceeds between bank accounts; and
j. submitting false claims of identity theft supported by counterfeit police reports.

22. It was further a part of the conspiracy and scheme to defraud that the defendants obtained insurance policies for vehicles with various insurance carriers.

23. It was further a part of the conspiracy and scheme to defraud that the defendants submitted insurance claims wherein they falsely claimed that motor vehicles were damaged. The defendants typically submitted these claims after a hurricane or storm impacted the coastal areas of North Carolina and South Carolina so as to lend credibility to their fraudulent claims of flooding or other damage.

24. It was further a part of the conspiracy and scheme to defraud that, when submitting false insurance claims for vehicles that were encumbered by liens, the defendants simultaneously made "full payment" to lienholders for the balance of the loan from bank accounts that the defendants knew lacked sufficient lacked funds. This caused lienholders to unwittingly release liens, enabling the defendants to receive insurance claim proceeds that should have instead been paid to a lienholder.

25. It was further a part of the conspiracy and scheme to defraud that the defendants sold fraudulently-obtained vehicles to innocent third parties while concealing the fact that the title was encumbered by a lender's lien.

26. It was further a part of the conspiracy and scheme to defraud that defendant BARRETT BAXLEY, without authorization, used his father's identity to purchase vehicles and insurance policies, and posed as his father when communicating with insurance companies in connection with fraudulent insurance claims.

27. It was further part of the conspiracy and scheme to defraud that the defendants caused mail to be sent and received by U.S. Mail and by commercial interstate carriers within the Eastern District of North Carolina and elsewhere.

28. It was further a part of the conspiracy and scheme to defraud that the defendants caused the transmission of interstate wire communications, including phone calls, text messages, emails, and social media posts, within the Eastern District of North Carolina and elsewhere.

29. It was further a part of the conspiracy and scheme to defraud that the defendants caused fraud proceeds to be deposited into, and transferred from, accounts with various financial institutions within the Eastern District of North Carolina and elsewhere.

All in violation of Title 18, Unites States Code, Section 1349.

## COUNT TWO

30. The Grand Jury realleges and incorporates by reference the allegations contained in Paragraphs 1 through 10 of this Indictment as if fully set forth herein.

31. Beginning at a date unknown to the Grand Jury, but no later than in or about July 2018, and continuing up to and including the present, in the Eastern District of North Carolina and elsewhere, BARRETT BAXLEY and CONSTANCE BAXLEY, the defendants herein, did knowingly combine, conspire, confederate, agree and have a tacit understanding with others known and unknown, to commit certain offenses under Title 18, United States Code, Section 1956 and 1957 as follows:

a. To knowingly conduct and attempt to conduct financial transactions in and affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, mail fraud and bank fraud, punishable under a law of the United States, and, while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b. To knowingly engage and attempt to engage in monetary transactions in criminally derived property that was of a value

grater than $10,000, in violation of Title 18, United States Code, Section 1957(a);

All in violation of Title 18, United States Code, Sections 1956(h).

## COUNTS THREE THROUGH TWELVE

32. The Grand Jury realleges and incorporates by reference the allegations contained in Paragraphs 1 through 10 of this Indictment as if fully set forth herein

33. On or about the dates set forth in each row of the table below, in the Eastern District of North Carolina, and elsewhere, the defendants, aiding and abetting one another, did knowingly engage and attempt to engage in each of the monetary transactions defined in the table below by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, transfer and exchange of U.S. currency, funds, and monetary instruments, such property having been derived from a specified unlawful activity, that is, bank fraud, wire fraud and mail fraud.

| Count | Defendant(s) | Date | Monetary Transaction |
|---|---|---|---|
| 3 | Barrett Baxley | 03/15/2022 | The transfer of $20,400 from First National Bank account ending -7852 to First National Bank account ending -9209 |
| 4 | Barrett Baxley | 11/07/2022 | The withdrawal of $11,000 over two transactions from First National Bank account ending -9593 |
| 5 | Barrett Baxley | 11/09/2022 | The withdrawal of $70,000 from First National Bank account ending -9593 |
| 6 | Barrett Baxley | 11/13/2022 | The transfer of $51,000 from First National Bank account ending -9480 to First National Bank account ending -9209 |

| | | | |
|---|---|---|---|
| 7 | Barrett Baxley | 11/14/2022 | The transfer of $11,000 over two transactions from First National Bank account ending -9480 to First National Bank account ending -9209 |
| 8 | Barrett Baxley | 11/15/2022 | The transfer of $23,000 from First National Bank account ending -9480 to First National Bank account ending -9209 |
| 9 | Barrett Baxley | 11/18/2022 | The withdrawal of $90,000 from First National Bank account ending -9209 |
| 10 | Constance Baxley | 11/30/2022 | The withdrawal of $200,000 from First National Bank account ending -9593 |
| 11 | Constance Baxley | 12/28/2022 | The withdrawal of $50,000 from First National Bank account ending -9209 |
| 12 | Constance Baxley | 12/28/2022 | The cash purchase of a $260,000 official check issued by First National Bank |

Each row of the table constituting a separate violation of Title 18, United States Code, Section 1957 and 2.

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

Upon conviction of any violation of, or conspiracy to violate, Sections 1341, 1343, or 1344 of Title 18 of the United States Code affecting a financial institution, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the said violation.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

a) A sum of money representing the gross proceeds of the offense(s) charged herein against BARRETT BAXLEY;

b) A sum of money representing the gross proceeds of the offense(s) charged herein against CONSTANCE BAXLEY

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has

been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL

REDACTED VERSION
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

FOREPERSON

Date: 24 Nov 25

W. ELLIS BOYLE
United States Attorney

TOBY LATHAN
Assistant United States Attorney
Criminal Division